# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

SHONNA LEIGH JORDAN,

      Plaintiff,

v.                                                                                                No. 1:24-cv-0467 WJ/DLM

LELAND DUDEK,[1] Acting
Commissioner of Social Security,

      Defendant.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on Plaintiff Shonna Leigh Jordan's Motion to Reverse and Remand to Agency. (Doc. 17.) Having considered the record, submissions of counsel, and relevant law, the Court recommends the motion be denied.[2]

## I.    Procedural History

On September 23, 2019, Jordan protectively filed an application with the Social Security Administration for a period of disability insurance benefits (DIB) under Title II of the Social Security Act (SSA), and on February 24, 2020, she filed an application for supplemental security income (SSI). (Administrative Record[3] (AR) at 10, 274–82.) Jordan alleged a disability onset date of February 1, 2019. (*Id.* at 274, 281.) Disability Determination Services (DDS) determined that Jordan was not disabled initially and on reconsideration. (*Id.* at 90–161.) Jordan requested a

---

[1] Leland Dudek is the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is substituted as defendant in this suit.

[2] United States Senior District Judge William P. Johnson entered an Order of Reference Relating to Social Security Appeals referring this case to the undersigned Magistrate Judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 10.)

[3] Document 12 contains the sealed Administrative Record. (Doc. 12.) I cite the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

hearing with an Administrative Law Judge (ALJ). (*Id.* at 184.)

Both Jordan and a vocational expert (VE) testified during the *de novo* hearing. (*See id.* at 48–89.) ALJ Reuben Sheperd issued an unfavorable decision on July 6, 2023. (*Id.* at 10–26.) Jordan submitted a Request for Review of Hearing Decision/Order to the Appeals Council (*id.* at 268–70), which the Council ultimately denied on December 15, 2023 (*id.* at 1–6). Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.  The Sequential Evaluation Process and the ALJ's Findings

"The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); *see also* 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is eligible for disability benefits, the Commissioner follows a sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not "doing substantial gainful activity"; (2) she has a severe impairment or combination of impairments that has lasted or is expected to last for at least one year; and (3) her impairments meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R §§ 404.1520(a)(4)(i)–(iv), 416.920(a)(4)(i)–(iv); *see also* 20 C.F.R. §§ 404.1509, 416.909; *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "RFC is a multidimensional description of the work-related abilities a claimant retains in spite of [her]

medical impairments." *Garcia v. Saul*, 509 F. Supp. 3d 1306, 1310 (D.N.M. 2020) (quoting *Ryan v. Colvin*, No. 15-cv-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016)) (citing 20 C.F.R. § 404.1545(a)(1)) (brackets omitted). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient [RFC] to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

At Step One, ALJ Sheperd found that Jordan "has not engaged in substantial gainful activity since February 1, 2019, the alleged onset date." (AR at 13 (citing 20 C.F.R. §§ 404.1571–76, 416.971–76).) At Step Two, the ALJ concluded that Jordan "has the following severe impairments: cervical degenerative disc disease; migraines; hearing loss; major depressive disorder; [and] anxiety disorder." (*Id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).) At Step Three, the ALJ found that Jordan "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." (*Id.* at 16 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).)

At Step Four, the ALJ considered the evidence of record and found:

[Jordan] has the [RFC] to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) with certain restrictions. Specifically, [she] can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl; she must avoid unprotected heights and hazardous machinery; she can work in a moderate noise environment, consistent with an office setting; she can perform simple routine tasks and make simple work-related decisions; she can have occasional interactions with supervisors, coworkers, and the general public; and, she can tolerate few changes in a routine work setting.

(*Id.* at 18.)

Based on his review of the record and the testimony of the VE, ALJ Sheperd found that Jordan is able to perform occupations such as Cleaner, Housekeeping; Cafeteria Attendant; and Marker. (*Id.* at 25.) The ALJ ultimately determined that Jordan "has not been under a disability, as defined in the Social Security Act, at any time from February 1, 2019, through the date of [the] decision." (*Id.* at 26 (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).)

### III.   Legal Standard

The Court reviews the Commissioner's decision to determine whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). While a deficiency in either area is grounds for remand, *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012), the Court may neither reweigh the evidence nor substitute its judgment for the agency's, *see Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

To decide whether the ALJ applied the correct legal standards, the Court must determine whether he adhered to "the specific rules of law that must be followed in weighing particular types of evidence in disability cases . . . ." *Lax*, 489 F.3d at 1084) (quotation marks and citation omitted). To determine whether substantial evidence supports the ALJ's factual findings, the "[C]ourt looks to [the] administrative record and asks whether it contains 'sufficien[t] evidence to support the agency's factual determinations.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). Substantial evidence "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (citation omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though

the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

## IV. Discussion

Jordan argues remand is warranted because the ALJ failed to properly assess the opinion of DDS Consultative Psychological Examiner Eligio R. Padilla, Ph.D. and, alternatively, because he failed to properly develop the record. (*See* Doc. 17 at 11–14.) I recommend denying the motion.

### A. Jordan has not demonstrated reversible error in the ALJ's analysis of Dr. Padilla's opinion.

With respect to Jordan's first point of error, I recommend finding that the ALJ's assessment of Padilla's opinion was legally sufficient. Under the revised regulations, the ALJ must "consider[] the persuasiveness of [all medical] opinions using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as 'a medical source's familiarity with the other evidence in a claim.'" *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 (10th Cir. July 6, 2021) (quoting 20 C.F.R. §§ 404.1520c(c), 416.920c(c)). Supportability and consistency "are the most important factors[,]" and the ALJ must explain how he considered those two factors in evaluating medical opinions. 20 C.F.R. § 404.1420c(b)(2), 416.920c(b)(2). The ALJ may, but is not required to, address the remaining factors. *See id.* The ALJ need only "provide enough detail such that the Court 'can follow the adjudicator's reasoning' and determine whether the 'correct legal standards have been applied.'" *Emerald v. Kijakazi*, No. 22-cv-0470 GBW, 2023 WL 6389075, at *3 (D.N.M. Sept. 30, 2023) (quoting *Keyes-Zachary*, 695 F.3d at 1166) (subsequent citation omitted). Jordan argues that the ALJ did not adequately explain how he considered supportability and consistency in assessing Padilla's opinion. (*See* Doc. 17 at 11–13.) Having considered the parties' arguments and the relevant law, I recommend finding

that ALJ Sheperd's assessment of Padilla's opinion is satisfactory.

Padilla performed a psychological consultative examination on September 28, 2021, at the request of DDS. (*See* AR at 23, 725.) Padilla's exam consisted of: (1) a clinical interview; (2) a mental status examination (MSE); (3) administration of the Mini-Mental Status Exam, the Beck Depression Inventory, and the Wechsler Adult Intelligence Scale; and (4) a records review.[4] (*See id.* at 725.) Padilla opined marked limitations in Jordan's abilities to persist at tasks of basic work and adapt to changes in the workplace, a moderate limitation in her ability to interact with others, a mild limitation in her ability to understand and remember complex, multistep instructions, and no limitation in her ability to understand and remember basic instructions. (*See id.* at 729.)

The ALJ recounted Padilla's clinical interview and Jordan's self-reporting of symptoms ("long history of depression and . . . mental health treatment[,]" crying/sadness, difficulty making decisions or concentrating for prolonged periods, low energy, fatigue), and the MSE results ("grossly intact attention and concentration, full orientation, grossly intact recall/memory, grossly intact judgment," above average intelligence, limited insight, dysphoric mood). (*Id.* at 23 (discussing AR at 726–28).) He noted that Padilla diagnosed Jordan with major depressive disorder, recurrent and severe, and opined the limitations described above. (*See id.*) ALJ Sheperd concluded that "Padilla's opinion [is] only somewhat persuasive." (*See id.*) Specifically, he found:

> The areas of opined limitation are supported by the overall record; however, the degree of [the] assessed limitation overstates [Jordan's] issues. The examiner's own report indicates only a few positive findings that do not support any marked limitation. Furthermore, the treatment notes, which are quite sparse, also do not suggest marked limitations.

---

[4] Padilla reviewed four records: (1) an April 6, 2020 treatment note from physician Mona Abousleman, M.D., P.C. (*see* AR at 661–63); (2) an August 18, 2020 treatment note from Abousleman (*see id.* at 689–91); (3) a June 4, 2021 letter written by Denise Long, LCSW, Jordan's former therapist (*see id.* at 711); and (4) a May 15, 2021 third-party function report completed by Antonio Lucero, Jordan's friend (*see id.* at 396–405). (*See id.* at 725.)

(*Id.*)

Jordan first argues that while ALJ Sheperd deemed the opinion "only somewhat persuasive[,]" he failed to "explain which parts he found persuasive or unpersuasive." (Doc. 17 at 11.) Jordan cites *Klein v. Kijakazi*, No. 20-cv-1199 LF, 2022 WL 2827582 (D.N.M. July 20, 2022), in support. In *Klein*, the ALJ provided a brief two-sentence analysis to explain why she found a state agency psychology consultant's opinion "somewhat persuasive." *See id.* at *7. The *Klein* court observed that the inadequate explanation was but "a symptom of the larger problem with the ALJ's decision[,]" as "the ALJ [also] failed to adequately articulate how she arrived at [the claimant's] mental RFC." *See id.* Jordan does not argue here that ALJ Sheperd failed to articulate how he arrived at the mental RFC. (*See* Doc. 17.) Moreover, ALJ Sheperd provided a much more thorough discussion of Padilla's exam by summarizing findings from the clinical interview and MSE. (*See* AR at 23.) And as described below, I believe the ALJ adequately analyzed the supportability and consistency factors. In short, *Klein* does not control the outcome in this case.

1. **Supportability**

Jordan contends the ALJ's analysis of the "supportability" factor is inadequate.[5] (Doc. 17 at 11.) In analyzing supportability, the ALJ must examine how "closely connected" Padilla's opinion is to the evidence and his explanations: "'The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be.'" *Emerald*, 2023 WL 6389075, at *3 (quoting *Zhu*, 2021 WL 2794533, at *5); *see also* 20 C.F.R. §§ 404.1520c(c)(1),

---

[5] Jordan wonders whether ALJ Sheperd "understands the definitions of 'supportability and consistency[,]" given that he found "Padilla's opinion [is] 'supported by the overall record . . . .'" (*See* Doc. 17 at 11 (quoting AR at 23).) Under the revised regulations, "consistency" refers to how a medical opinion compares to the record evidence. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). I find no issue with the ALJ's word choice, as I am able to follow the analysis. *See Keyes-Zachary*, 695 F.3d at 1166.

415.920c(c)(1). In *Emerald*, for example, the court held that the ALJ adequately evaluated the supportability of a provider's opinion when the ALJ noted the opinion was "supported by [the provider's] mostly unremarkable findings on mental status examination . . . ." *Emerald*, 2023 WL 6389075, at *5. The court found that "the ALJ described [the provider's] medical findings in detail, including several examples of unremarkable exam findings." *Id.* (citation omitted). Similarly, here, ALJ Sheperd found that "the degree of [Padilla's] assessed limitation[s] overstates [Jordan's] issues[,]" because Padilla's "own report indicates only a few positive findings that do not support any marked limitation." (AR at 23.) He adequately summarized Padilla's clinical interview and MSE, as described above. (*See id.*) Ultimately, the ALJ provided specific evidence sufficient to follow his reasoning: i.e, that the interview and examination do not support the marked limitations Padilla opined. *See Keyes-Zachary*, 695 F.3d at 1166.

Jordan further complains that ALJ Sheperd did not specifically reference the fact that Padilla reviewed records or administered the BDI-II. (Doc. 17 at 11 (citing AR at 725).) The Commissioner responds that the records Padilla reviewed "were largely benign and related primarily to her physical conditions." (Doc. 22 at 11 (citations omitted).) Notwithstanding the fact that ALJ Sheperd specifically referenced three of the four records elsewhere in his decision (*see* AR at 22–23), Jordan fails to establish that the records themselves, or any failure to mention that Padilla examined them, undermines a finding that substantial evidence supports his assessment. As far as the BDI-II, which Padilla administered "[t]o gain a clearer understanding of [Jordan's] experience of depression and anxiety" (*see id.* at 725), Jordan points to nothing in the statements she endorsed on the BDI-II that the ALJ did not cover in his review of Padilla's interview/MSE. (*Compare id.* at 727, *with id.* at 23.) Regardless, the Tenth Circuit has found that "an ALJ is not required to discuss every piece of evidence[,]" and Jordan does not advance a colorable argument

that the ALJ's decision not to discuss the record review or the BDI-II results amounts to reversible error. *See Clifton v. Chater*, 79 F.3d at 1007, 1009–10 (10th Cir. 1996) (citation omitted).

To the extent Jordan argues the ALJ picked and chose among Padilla's findings (Doc. 17 at 11), I disagree. Jordan includes a variety of statements/conclusions from Padilla's opinion. (Doc. 17 at 11–12 (noting her statements regarding pain and fatigue and their exacerbation of her depression and anxiety; crying; major depression diagnosis; limited insight; dysphoric mood/affect; thought content); *see also* Doc. 23 at 6.) She avers that she is not asking the Court to reweigh the evidence and argues that the ALJ failed to consider the proffered evidence. (*See* Doc. 17 at 12.) I disagree on both counts. The ALJ touched on almost all these points in summarizing Padilla's opinion. (*See* AR at 23 (discussing depression; crying; fatigue; major depressive disorder diagnosis; limited insight; dysphoric mood/affect).) On the few points he failed to specifically address, Jordan fails to show reversible error. Her argument is, at base, a request to reweigh the evidence, which the Court may not do. *See Bowman*, 511 F.3d at 1272. In sum, I recommend finding that the ALJ's supportability analysis is legally sufficient.

### 2. Consistency

Jordan similarly argues that the ALJ's analysis of the consistency factor is insufficient. (*See* Doc. 17 at 11–13.) In analyzing consistency, the ALJ "compares [the] medical opinion to the evidence: 'The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be.'" *Emerald*, 2023 WL 6389075, at *3 (quoting *Zhu*, 2021 WL 2794533, at *5); *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). In *Emerald*, the court determined that the ALJ adequately evaluated the consistency of a medical opinion where the ALJ found it was "consistent with mental health treatment notes showing [the c]laimant is generally stable . . . ." *Emerald*, 2023 WL

9

6389075, at *5. The court observed that the ALJ had "described [the claimant's] mental health records from other medical providers, including . . . examples of unremarkable findings." *Id.* (citation omitted). Thus, the ALJ's assessment was "specific enough for the Court to review the ALJ's findings, and thus sufficient under the law." *Id.* (internal citation omitted).

The same is true here. ALJ Sheperd found that the overall record supported the areas of limitations but concluded that Padilla overstated the degree of those limitations. (AR at 23.) I recommend finding that the ALJ's decision is legally sufficient and supported by substantial evidence. The ALJ satisfactorily summarized the record evidence regarding Jordan's mental health limitations including, for example: Jordan's self-reports of how those limitations affect her life,[6] MSE results,[7] treatment notes from a parenting group,[8] Jordan's attendance of counseling sessions,[9] and her medications and reasons for discontinuing them.[10]

The parties also discuss the specific medical records Padilla reviewed. (*See* Docs. 17 at 11; 22 at 7–8; 23 at 5–6.) These records included two treatment notes from Jordan's physician (Abousleman), who saw Jordan "for neck pain, back pain[,] and anxiety" and a physical examination/pap smear; reflected that Jordan was in counseling, which was helping; and

---

[6] (*See, e.g.*, AR at 17 (referencing depression, anxiety, brain fog, crying, effects of stress, etc.).)

[7] (*See, e.g.*, AR at 17 ("[MSEs] indicate no limitation in attention and concentration"), 21 (discussing increased stress due to homelessness), 22 ("[MSE] documented an anxious mood with congruent affect" (citing AR at 678)).)

[8] (*See* AR at 22 (noting Jordan reported "symptoms of anxiety, including pressure and tightness in her chest and difficulty thinking clearly, as well as symptoms of depression such as crying, increased lethargy, decreased motivation and energy, and feelings of hopelessness and worthlessness").)

[9] (*See, e.g.*, AR at 22 (noting there are no counseling treatment records, but there is evidence Jordan attended counseling until August 2020 (citing AR at 711)), 22 (discussing counselor's letter, which outlined treatment goals (citing AR at 711)).)

[10] (*See* AR at 22 (noting Jordan started Zoloft and trazodone for mental health symptoms but discontinued usage, testifying "that she avoids many prescription medications due to her Stevens Johnson syndrome" (citing AR at 689, 765)).)

documented Jordan's prescription medication trials and usage (Zoloft, Trazadone, Adderall, Lexapro). (*See* AR at 662, 669, 689.) Jordan was pleasant, alert, oriented, and exhibited no acute distress, and she reported high levels of stress at both appointments. (*See id.* at 662, 692.) Abousleman observed that Jordan's anxiety and depression were "[g]etting better" in April 2020, but her anxiety was "[n]ot controlled" in August 2020. (*Id.* at 663, 692.) Padilla also reviewed a third-party function report from a friend who observed that Jordan "seems tired all the time and depressed from her pain preventing her from most activities all the time" (*id.* at 405); and a letter from Jordan's counselor who stated that Jordan "sought treatment to alleviate behavioral manifestations of post-traumatic stress, anxiety, and depression" (*id.* at 711). Jordan argues that "[t]hese records support Dr. Padilla's findings." (Doc. 23 at 6.) She also urges the Court to consider other record evidence that she asserts the ALJ did not mention (*see* Doc. 17 at 12–13 (citing AR at 660, 669, 672, 676–78, 689).) Jordan's position is unavailing, as the ALJ explicitly referenced at least four of these six records. (*See* AR at 15 (discussing AR at 677), 22 (discussing AR at 676, 678, 689).) Her invitation is again nothing more than a request to reweigh the evidence.[11] Even if the Court was inclined to draw a conclusion different from ALJ Sheperd, that "does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Tenth Circuit law is clear that the Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

---

[11] Jordan cites *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004), to support her argument that the ALJ failed to explain inconsistencies between Padilla's opinion and the record evidence. (Doc. 17 at 13.) In that case, however, the opinion at issue had clear evidentiary support from other providers who noted specific and discrete limitations in the claimant's abilities. *See Langley*, 373 at 1123. Jordan fails to adequately demonstrate that specific record evidence in this case similarly supports Padilla's opined marked limitations. (*See* Doc. 17 at 13.)

11

Jordan argues that the ALJ's comment concerning the sparsity of the treatment notes constitutes error because he "does not state to which treatment notes he was referring . . . ." (Doc. 17 at 12 (citation omitted).) I disagree and can follow the ALJ's reasoning in determining that Padilla's opined marked limitations were not supported by the evidence. ALJ Sheperd summarized various treatment notes relevant to Jordan's mental health limitations throughout his analysis. He was "not required to repeat all of the medical evidence" when he assessed Padilla's opinion. *See Emerald*, 2023 WL 6389075, at *4 (citing *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012)). In sum, I recommend finding the ALJ's analysis of the consistency factor is legally sufficient and his findings are supported by substantial evidence. *See Marianne R. T. v. O'Malley*, No. 23-cv-0216-KRS, 2024 WL 1140933, at *6 (D.N.M. Mar. 15, 2024) (finding that in discussing supportability and consistency, the ALJ's "explanation must at least 'eschew rote analysis and conclusory explanations and discuss the crucial factors . . . with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence'") (quoting *Frazer v. Kijakazi*, No. 20-cv-1147 GBW, 2022 WL 682661, at *5 (D.N.M. Mar. 8, 2022)) (cleaned up). Consequently, I recommend denying the motion on this issue.

> **B.    Remand is not warranted for any alleged failure to develop the record.**

I also recommend denying Jordan's request to remand on the basis that the ALJ failed to develop the record. ALJs are obligated "to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Elledge v. Kijakazi*, No. 22-cv-0123 KWR/GJF, 2023 WL 1098158, at *3 (D.N.M. Jan. 30, 2023) *R&R adopted*, 2023 WL 1993817 (D.N.M. Feb. 14, 2023) (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir. 1993)) (citing *Wall*, 561 F.3d at 1062–63). The duty to develop ends "if 'sufficient information exist[s] for the ALJ to make [a] disability determination.'" *Id.* (quoting

*Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008)). "Further, if the claimant is represented by counsel at the administrative hearing, the ALJ's duty is lessened because he is 'entitled to rely on the [attorney] to structure and present [the claimant's] case in a way that the claimant's claims are adequately explored.'" *Id.* (quoting *Cowan*, 552 F.3d at 1188).

Jordan contends the ALJ had a duty to develop the record due to "clear evidence of missing [counseling] records" and because the ALJ acknowledged that Jordan's mental health records were sparse.[12] (*See* Doc. 23 at 8.) I disagree. Jordan was represented by counsel, and her attorney both knew that certain records were missing (*see, e.g.*, AR at 466 (attorney's pre-hearing letter indicating they had requested additional records) and also explicitly asked the ALJ to close the record on a date certain regardless of whether those records were submitted (*see id.* at 47 (attorney's post-hearing letter noting they requested records and asking the ALJ to "close the record on May 15, 2023 for a decision"). ALJ Sheperd issued his decision on July 6, 2023, and there is no evidence Jordan's attorney submitted additional records or sought to extend time to submit records past May 15, 2023. (*See id.* at 26.) Given the attorney's submissions, I recommend finding that "[t]he ALJ was entitled to rely on [the] record . . . , [and] the fault lies with [Jordan's] attorney for neglecting" to submit additional records or ask for more time to do so. *See Elledge*, 2023 WL 1098158, at *8.

The duty to develop is "trigger[ed] only when the record suggests that a claimant suffers from a disorder yet lacks '[]sufficient medical evidence to evaluate the disorder and its effects on

---

[12] Jordan states that "the whole purpose of a consultative examination is to evaluate a claimant where there is insufficient evidence." (Doc. 17 at 13.) She posits that "[i]f the ALJ felt the psychological evidence in this case was insufficient to evaluat[e] Ms. Jordan's impairments, he should have developed the record." (*Id.*) Jordan's argument on this point is not entirely clear, but she seems to suggest that when DDS orders a consultative examination, it indicates there is insufficient evidence in the record to make a disability determination, and thus the ALJ has a duty to further develop the record. If that is, indeed, Jordan's argument, she fails to cite authority to support such a finding.

the claimant's ability to work . . . ." *Elledge*, 2023 WL 1098158, at *3 (quoting *Jones v. Chater*, 110 F.3d 73, at *2 (10th Cir. Apr. 2, 1997)). Jordan assumes that ALJ Sheperd needed more information to evaluate her mental health impairments and their effect on her RFC, and she argues that the Tenth Circuit's decision in *Maes v. Astrue*, 522 F.3d 1093 (10th Cir. 2008) supports her position. (Doc. 23 at 8.) There, the claimant (Maes) argued that the ALJ erred by failing to develop the record because he did not obtain her treating physician records. *Id.* at 1096–97. The Tenth Circuit did *not* remand on that basis, as Maes "was represented by counsel, the ALJ was entitled to rely on counsel's representation of the claims and records that might be involved, and" it was clear "that counsel made no effort to point out the existence or relevance of [the records] to the ALJ." *Id.* at 1097. Rather, the Tenth Circuit found that the record was "inadequate to determine whether [Maes was] disabled." *See id.* Specifically, the ALJ noted that Maes was prescribed depression medication, but the record evidence did not reveal whether she "was specifically diagnosed with or treated for depression or another mental condition." *Maes*, 522 F.3d at 1098. "*Based on this lack of evidence*, the ALJ determined that Maes was not disabled during the relevant period." *See id.* (emphasis added). The Tenth Circuit held the ALJ's determination was reversible error, as evidence of a prescription, without more, constituted "an inadequate basis for a determination . . . as to [her] alleged disability." *See id.* at 1098. *Maes* is distinguishable from the circumstances before the Court. Here, ALJ Sheperd adequately explored Jordan's mental health impairments at the hearing and reviewed a variety of medical and nonmedical evidence relevant to her mental health impairments in determining her severe impairments (including anxiety and depression) and assessing the RFC (which included limitations relevant to her mental health impairments). (*See* AR at 17–23, 67, 73–79.) *See also Elledge*, 2023 WL 1098158, at *3. I recommend finding that "[t]he record contained sufficient information on [Jordan's] mental health

14

conditions without the need for" additional treatment records, *see Elledge*, 2023 WL 1098158, at *9, and that the ALJ's determination was supported by substantial evidence. As a result, I recommend denying Jordan's motion on this issue.[13]

## V.     Conclusion

Jordan fails to demonstrate that the ALJ's assessment of Padilla's opinion was legally deficient, or that the ALJ erred in failing to obtain additional mental health records. Consequently, I recommend denying the motion to remand.

**IT IS HEREBY RECOMMENDED** that Jordan's Motion to Reverse and Remand (Doc. 17) be **DENIED.**

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE

---

[13] Jordan summarily argues the ALJ "failed to address her reasons for a lack of treatment." (Doc. 17 at 14 (citing *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)).) Specifically, she notes that she "was homeless during at least part of the period at issue." (*Id.* (citing AR at 725; *Padilla v. Colvin*, No. 13-cv-0103 GBW, 2014 WL 12787980, at *9 (D.N.M. Sept. 25, 2014)).) Jordan fails to adequately develop this point. To begin, Jordan does not contend that she did not receive medical treatment due to her living situation. (*See id.*) Rather, the missing records existed, she simply failed to submit them. Moreover, the ALJ noted that Jordan "was homeless during part of the relevant period, living with friends or family." (*See* AR at 19.) Jordan fails to show the ALJ committed reversible error on this point.

15